KRISTIAN BECKETT, ISBN: 8731
FRANK SCHREIBER, (ISBN: 10197)
BECKETT LAW FIRM
PO BOX 4
KUNA, IDAHO 83634
Phone: (425) 654-1142
Fax: (425) 222-2215
kristian@beckettlegal.com
Attorneys for Plaintiff

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

---

| | |
|---|---|
| RILEE A. LUTZ<br><br>                      Plaintiff,<br><br>v.<br><br>BEAR LAKE COUNTY, an Idaho political subdivision, BEAR LAKE COUNTY SHERIFF'S OFFICE, an agency of an Idaho political subdivision, BART HESLINGTON, individually and in his official capacity as Bear Lake County Sheriff; MATTHEW KUNZ, individually and in his official capacity as a deputy with the Bear Lake County Sheriff's Office, ADAM MCKENZIE, individually and in his capacity as prosecutor for Bear Lake County; HANNAH DECLARK, individually, and DOES I-X<br><br>                      Defendants. | Case No.<br><br><br>COMPLAINT<br><br><br><br>**(Demand for Jury Trial)** |

COMES NOW, Plaintiff, RiLee A. Lutz, by and through her attorney of record, Kristian

Beckett of the BECKETT LAW FIRM, and does hereby complain and allege the following

against each defendant collectively and individually as follows:

<u>JURISDICTION & PARTIES</u>

1.      This court has jurisdiction over this action under the laws of the State of Idaho and the United States, including 42 U.S.C., §§1983, 1985, 1986, 1988; 28 U.S.C. §1343;

2.      At all times material hereto Plaintiff, RiLee A. Lutz ("Lutz") is a citizen of the State of Idaho, United States of America.

3.      Bear Lake County is a political subdivision of the State of Idaho pursuant to Idaho Code § 6-902 and is subject to liability pursuant to Idaho Code § 6-903.

4.      Bear Lake County Sheriff's Office is a Governmental Entity of Bear Lake County pursuant to Idaho Code § 6-902 and is subject to liability pursuant to Idaho Code § 6-903.

5.      Sheriff Bart Heslington is an elected official and an employee for and in behalf of Bear Lake County Idaho pursuant to Idaho Code § 6-902 and is subject to liability pursuant to Idaho Code § 6-903.

6.      At all times material hereto Matthew Kunz, was an Employee and Deputy Sheriff of Bear Lake County Idaho pursuant to Idaho Code § 6-902 and is subject to liability pursuant to Idaho Code § 6-903.

7.      Adam McKenzie, is an elected official and employee for and in behalf of Bear Lake County Idaho pursuant to Idaho Code § 6-902 and is subject to liability pursuant to Idaho Code § 6-903.

8.      Hannah DeClark, is an individual, resident of Bear Lake County.

9.      Plaintiff has named DOES I-X as individual defendants and has provided the name DOE as a pseudonym or placeholder for each DOE Defendant until such a time as the proper individuals can be substituted in or identified as being a proper defendant in this action.

DOE defendants may be individuals who participated in the stated claims, failed to act when the law required them to act and may be liable under joint and several responsibility or may have acted in a supervisory capacity or as the employer of any of the named defendants and may, upon discovery, be substituted in as the proper party in interest.

10.     Defendants BEAR LAKE COUNTY, BEAR LAKE COUNTY SHERIFF'S OFFICE, BART HESLINGTON, MATTHEW KUNZ, and ADAM MCKENZIE are sued pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and Chapter 9, Title 6 Idaho Code;

11.     Plaintiff is entitled to attorney's fees and costs pursuant to 42 U.S.C. §1988 for maintenance of this action.

12.     Defendant Hannah DeClark is being sued pursuant to the laws of the State of Idaho.

<u>FACTS</u>

13.     All preceding paragraphs are hereby renewed and incorporated herein by reference.

FACTUAL AVERMENTS

14.     On or about June 9, 2022, Hannah DeClark turned 18 years old.

15.     On information, on or about June 20, 2022, Tahnee Cook, Bear Lake High School Junior Varsity Softball Coach, sought a meeting with Luke Kelsey, Principal Bear Lake High School, and Cameron Crane, Counselor Bear Lake High School, regarding a recorded conversation with an unidentified person and Hannah DeClark.

16.     The recorded conversation, identified in paragraph 15, included a statement from Hannah DeClark to the unidentified female that she had a "sugar mamma" and identified the sugar mamma as RiLee Lutz.

17.     On information, after listening to the recording Cameron Crane determined that there was no illegal conduct and no further action was taken.

18.     On information, on or about September 7, 2022, Tahnee Cook, met with Kelsea Skinner, a Bear Lake High School softball player and student at Bear Lake High School, and during that meeting the topic of a relationship between RiLee Lutz and Hannah DeClark was brought up.

19.     On information, on or about September 7, 2022, Tahnee Cook directed Kelsea Skinner to report the information to Cameron Crane.

20.     On information, on or about September 8, 2022, Kelsea Skinner met with Cameron Crane to discuss her knowledge regarding a relationship between RiLee Lutz and Hannah DeClark.

21.     On information, on or about September 8, 2022, Kelsea Skinner reported to Cameron Crane that she was aware of a possible relationship between RiLee Lutz and Hannah DeClark.

22.     On information, on or about September 8, 2022, Kelsea Skinner reported to Cameron Crane that she did not know when the relationship between Hannah DeClark and RiLee Lutz started only that she was aware, through statements from Hannah DeClark that after the end of the High School Softball Season, that Hannah DeClark and RiLee Lutz expressed mutual interest in each other.

23.     On information, on or about September 8, 2022, Kelsea Skinner reported to Cameron Crane that she was told by Hannah DeClark that she and RiLee Lutz became involved in a relationship sometime in mid-June 2022 and that the relationship became sexual.

24.     On information, on or about September 8, 2022, Kelsea Skinner reported to

Cameron Crane that she did not know what to believe from Hannah DeClark because she was known to lie.

25.     On information, on or about September 8, 2022, Kelsea Skinner reported to Cameron Crane that at some point in mid-June she was shown a picture of RiLee Lutz in a bra, by Hannah DeClark from her Snapchat messenger.

26.     On information, on or about September 8, 2022, Kelsea Skinner reported to Cameron Crane that she observed RiLee Lutz and Hannah DeClark in as car kissing sometime in July 2022.

27.      On information, on or about September 8, 2022, Kelsea Skinner reported to Cameron Crane that she was not part of the Bear Lake High School Softball team due to an injury and had no firsthand knowledge of any relationship between RiLee Lutz and Hannah DeClark other than her observing Hannah DeClark and RiLee Lutz sometime in July 2022 kissing.

28.     On information, on or about September 8, 2022, Kelsea Skinner reported to Cameron Crane that RiLee Lutz engaged in her role as a coach in a professional manner and that there was no indication of impropriety when she was around RiLee Lutz.

29.     On information, on or about September 8, 2022, Kelsea Skinner reported that she was not in and around or associated with the Bear Lake High School Softball team in the 2021-2022 Softball season due to injury.

30.     On information, on or about September 12, 2022, Cameron Crane called the superintendent and discussed the new information received from Kelsea Skinner.

31.     On information, on or about September 12, 2022, Cameron Crane was directed by the superintendent to inform law enforcement regarding the information.

32.     On information, on or about September 12, 2022, Cameron Crane contacted Sheriff Bart Heslington regarding the information he had received from Tahnee Cook and Kelsea Skinner.

33.     On information, on or about September 12, 2022, Sheriff Bart Heslington met with Cameron Crane regarding the information which he received from Tahnee Cook and Kelsea Skinner.

34.     On information, Sheriff Bart Heslington did not review the audio recordings which were provided to Cameron Crane by Tahnee Cook.

35.     On information, Sheriff Bart Heslington started an investigation into the alleged relationship between RiLee Lutz and Hannah DeClark.

36.     On information, on or about September 12, 2022, Sheriff Bart Heslington had an established relationship with Hannah DeClark, to wit, they knew each other, were friendly with each other, Hannah DeClark trusted Bart Heslington, Sheriff Bart Heslington had provided coaching for Hannah DeClark prior to September 12, 2022, and Sheriff Bart Heslington had acted in the role of a mentor,

37.     On information, on or about September 22, 2022, Sheriff Bart Heslington contacted Kristi DeClark to set up a meeting for himself and Hannah DeClark.

38.     On September 22, 2022, Sheriff Bart Heslington interviewed Hannah DeClark at her residence. (First Interview)

39.     During the First Interview, Sheriff Bart Heslington asked Hannah DeClark to "tell" him about the relationship between Hannah DeClark and RiLee Lutz, and in response Hannah DeClark stated "Umm, there's not a whole lot to say. Umm, there was never a relationship. We were never dating at all."

40.     During the First Interview, Sheriff Bart Heslington stated "Well, let me tell you a couple things. Okay? Umm, and I appreciate where you're coming from, and this is a conversation right now that's between us. Okay?" to which Hannah DeClark replied "I trust you. I trust you 100%."

41.     Sheriff Heslington continued by saying "So, here's the thing, Hannah, I understand your feelings, that dynamic. I also understand that with that comes a desire to protect, you to protect her." and "I know you guys were involved before [you turned 18]".

42.     Sheriff Bart Heslington had no personal knowledge or information to base his statement that he knew Hannah DeClark and RiLee Lutz were involved before Hannah DeClark turned 18 years old.

43.     Hannah DeClark stated that the two hung out…, and Sheriff Heslington interrupted Hannah DeClark and said: "And I'll... And I'll tell you... Well, I'll tell you. I, I... There is video of you two kissing and, umm, here's what I don't want to happen."

44.     Sheriff Bart Heslington had no knowledge or information about the existence of a video of Hannah DeClark and RiLee Lutz kissing.

45.     Sheriff Bart Heslington has not received any videos depicting Hannah DeClark and RiLee Lutz kissing.

46.     Sheriff Bart Heslington lied about the fact that there "is a video of [Hannah DeClark and RiLee Lutz] kissing.

47.     Sheriff Bart Heslington, thereafter stated: "Umm, this easily spirals into this is a coach, this is a teacher, it's a position of trust.", "And there's all this kind of stuff and...", "Like Hannah was coerced with, 'You're not gonna get playing time.'", "'You're not gonna get whatever.' So, so the bottom line is this, it's just, I know that the relationship was happening

during that time.", "What I don't wanna see is somebody coming out and alleging that you were forced, that it was against your will..." …., and "Right? I know that things... That the relationship was ongoing during that time. So we just need to be honest about what was going on and what the circumstances were so that this doesn't turn into, you know, I've got a coach that's raping one of her student athletes. Does that make sense?"

48.     On information and belief, Sheriff Bart Heslington made these statements in an effort to manipulate Hannah DeClark's perception and frame of mind, because Sheriff Bart Heslington knew that Hannah DeClark was of below average intelligence and was easily manipulated.

49.     Sheriff Bart Heslington, after setting the conversation landscape and priming Hannah DeClark with his dishonest statements, and stated: "So should we start over about kind of how things went?"

50.     Sheriff Bart Heslington, thereafter provided three cues upon which he wanted Hannah DeClark to provide statements. These three cues occurred in a short period of time. Based on Hannah DeClark's diminished mental faculties, was not capable of appreciating the rapid question sets.

51.     In response to the rapid questions Hannah DeClark stated "So the first time we kind of talked about it and addressed it was like after... I don't remember if it was after a game or... It was the end of the season, the season was over. And we'd been hanging out during the season, but I didn't know she felt that way, honest, I'm not kidding. I didn't know that she had felt that way during the season."

52.     Hannah DeClark further clarified saying "Yeah. So I usually park back there every day. So, I get off the bus and it would be cold or something. Anyway, she gave a couple of

us rides to our car from... 'Cause her car was like right by the loop, so she'd give a couple of us

rides. And like the first night, nothing really... Like, she took me to my car, we listened to music,

we kind of talked about life a little bit 'cause I think she broke up with her boyfriend or

something at the time. And then out of a sudden like... Nothing happened that night. She didn't

say she had a crush on me or anything. And then she texted me after I had left and said, "I don't

know what's happening, but if you feel the same way, the feeling is mutual." Or something."

53.     Sheriff Bart Heslington did not ask to see the text messages Hannah DeClark

alleged to have been sent and received.

54.     On information, Sheriff Bart Heslington has not seen the text messages which

Hannah DeClark alleged to have been exchanged between Hannah DeClark and RiLee Lutz.

55.     As of the date of this complaint Sheriff Bart Heslington has not produced any text

message from RiLee Lutz or Hannah DeClark which demonstrates that either Hannah DeClark

or RiLee Lutz claimed to have feelings for each other, romantic or otherwise.

56.     Hannah DeClark continued by saying ".... But, umm, I think physically, it

happened... I wanna say after graduation, but it was always like after a game or something. But

not that she'd be at or that I'd play at. But like, it was after graduation, I remember, umm, I... It

was just always at late... Late at night, we'd just go for drives and like sing and talk in the car."

57.     Bear Lake High School Softball Season concluded on May 14, 2022.

58.     Bear Lake High School Graduation for the 2021-2022 school calendar year

occurred on May 27, 2022.

59.     Bear Lake Softball started "summer ball" on or about June 16, 2022;

60.     RiLee Lutz was the Bear Lake Softball summer ball coach for the 2022 season.

61.     Hannah DeClark assisted the Bear Lake Softball summer ball program as an

assistant coach.

62.     Hannah DeClark did not start acting as an assistant coach of the Bear Lake Softball summer ball program until on or after June 8, 2022.

63.     Hannah DeClark did not play Bear Lake Softball summer ball.

64.     RiLee Lutz did not play Bear Lake Softball summer ball.

65.     In the first interview Hannah DeClark continued answering Sheriff Bart Heslington saying "And like hold hands, but I don't think I actually... There was any physical... Anything physical that happened until maybe like the, the night of like the homecoming. What... I don't remember the date of it, but it was like 2 o'clock in the morning and we were hanging out at the softball fields in town."

66.     Sheriff Bart Heslington responded to this information asking: "And so this was homecoming last year?"

67.     Hannah DeClark answered by saying: "This year. It was this year. It was my senior year. Right. And then... Yeah, last year."

68.     Sheriff Heslington again replies: "Yeah. So it would've been like last September."

69.     Hannah DeClark answers again saying: "Yeah, like last September and then everything after that, it's just kind of a blur." and further clarified "Yeah. We never dated or anything. Everything was consensual even though, you know... But I would... Everything was consensual on both parts. But…"

70.     Sheriff Bart Heslington interrupted Hannah DeClark and tried to lead her into confirming his version of events by saying " So you were 17 when the physical started?"

71.     DeClark attempted to further clarify answering: "When the kissing and stuff happened, but..., anything like that comes after the kissing part, I was 18 after that happened."

72.     Undaunted by the clear and unambiguous statement that nothing "physical" occurred before Hannah DeClark was 18 years old, Sheriff Bart Heslington continued questioning DeClark by asking "Okay. Okay. And when, when did you guys... I know there was a weekend that you guys spent together in the trailer. When was that?" to which Hannah DeClark responded, "That was, uh, a little bit after June."

73.     Hannah DeClark confirmed that that night spent in the trailer occurred at "Allinger Park" and further clarified that it occurred over the summer during one of the Softball tournaments when Hannah DeClark was coaching with RiLee Lutz.

74.     Sheriff Bart Heslington, again undaunted by the clear statements indicating that nothing untoward occurred between RiLee Lutz and Hannah DeClark, again brought up the issue of the fictitious video when he said "Okay. Umm, so like I say, I know that there was a video and was that... And I'm told that was during the softball season."

75.     Sheriff Bart Heslington lied about knowing that there was a video of Hannah DeClark and RiLee Lutz kissing.

76.     Sheriff Bart Heslington was never told that there was a video of Hannah DeClark and RiLee Lutz kissing during softball season.

77.     Sheriff Heslington sought to use false information to deceive Hannah DeClark.

78.     Sheriff Bart Heslington sought to use his position of trust to deceive Hannah DeClark, knowing that she trusted him 100% and that he would not deceive her.

79.     Sheriff Bart Heslington sought to have Hannah DeClark to provide false statements in response to his criminal investigation.

80.     When Hannah DeClark sought further information about this supposed video which Sheriff Bart Heslington stated existed, Hannah DeClark asked "Of us kissing?"

81.    To wit, Sheriff Bart Heslington confirmed "Mm-hmmm. In the car."

82.    Hannah DeClark thereafter denied that she ever took a video her and RiLee.

83.    To wit, Sheriff Bart Heslington stated "Well, I don't think that you, either of you took it."

84.    Sheriff Bart Heslington further inquired into the status of the relationship between RiLee Lutz and Hannah DeClark. Hannah DeClark stated that she is "just chilling by myself"

85.    Sheriff Bart Heslington responded saying "You and Riley are not together anymore?"

86.    Sheriff Bart Heslington's question suggested that Hannah DeClark were involved in a relationship when Hannah DeClark clearly stated that there was no relationship.

87.    Sheriff Bart Heslington, by asking the question inferring that there was a relationship sought to further manipulate Hannah DeClark.

88.    Hannah DeClark further clarified her prior statement and added further support for her statement that she and RiLee were not in a relationship by stating: "No. I haven't seen her since coed ball at the... Like this summer for coed. And I wasn't on her team. I was on Todd Mitchell's team. Michael's team." and "And I think, umm, everything ended this summer. So it's been at least maybe a month, I think." and "But we... I mean we still text here and there for sure. Like, 'How are you doing?'"

89.    Sheriff Bart Heslington asked "How did the relationship end?"

90.    In response Hannah DeClark stated that "mm, she said that since... So obviously there's an age gap and then she said that I wasn't at her... The level that she needed to be on and so she felt like that was a really big issue."

91.    DeClark continued "Yeah. Yeah. And, and she never tried to get me to stay. She

never was like, 'Come on, we can just be...' No, it was definitely me. I was like, 'Yeah, like I wanna make this work. I'll do what I have to do.' I turned 18. Like I just... I wanted to do it and like I wanted to be with her. And then my, my parents not supporting me and then like nobody's supporting me when it's tough also, so."

92.     Sheriff Bart Heslington asked Hannah DeClark who knows about the relationship to which Hannah replied "probably Kelsea Skinner", "Tanner", and "Shane Mitchell"

93.     Sheriff Bart Heslington in wrapping up the first interview said in response to Hannah DeClark's affirmation about no lying Heslington stated "Well, and that's important and I... Like I say, I don't want this to get construed or built into anything that it's not. But, but again, like I told you, it's, it's important that we are honest about it and that we talk about it, so..."

94.     Sheriff Bart Heslington, did misconstrue the nature and extent of the relationship between Hannah DeClark and RiLee Lutz.

95.     Hannah DeClark included the following illuminating statement regarding the nature and extent of the relationship between Hannah DeClark and RiLee Lutz when she said: "I guess it's a two-way street though, like, you can't be in a relationship with one person and one person do everything. Like, I guess what I'm saying is I feel like it's all on me, but it's not."

96.     Hannah DeClark clearly indicated that she was interested in a relationship while RiLee Lutz was not.

97.     Following the First Interview Sheriff Bart Heslington did not have reasonable articulable suspicion that RiLee Lutz engaged in any criminal conduct related to any relationship with Hannah DeClark.

98.     Less than 1 hour after the First Interview concluded Sheriff Bart Heslington showed up at Hannah DeClark's family home without notice. (Second Interview)

COMPLAINT - 13

99.     Kristi DeClark opened the door and invited Sheriff Bart Heslington into the family home.

100.    Kristi DeClark is the adoptive mother of Hannah DeClark.

101.    Sheriff Bart Heslington asked Kristi DeClark to invite Hannah DeClark into the home to discuss the situation further.

102.    Sheriff Bart Heslington stated to Kristi DeClark, after Hannah DeClark entered the home, "So, uh, I went to talk with Hannah about some things that I have had reported to me. Umm, and the reason I have come and talked to you is because some of these things happened, uh, when Hannah was a minor, before she turned 18. So, umm, at that point, umm, I'll just tell you that the information that I got is that, uh, Hannah has been involved in a, a personal, a sexual relationship with Rilee Lutz. Umm, and that's what I needed to talk to Hannah about. And, umm, I mean I guess the bottom line is, is that we talked about that and, uh, that has taken place. Umm, they are not involved in a relationship anymore..."

103.    Sheriff Bart Heslington's statement, and any inferences that can be drawn therefrom that Hannah DeClark and RiLee Lutz were engaged in a sexual relationship while Hannah DeClark was a minor is false.

104.    Sheriff Bart Heslington did not have anyone report to him that Hannah DeClark and RiLee Lutz were engaged in a sexual relationship while Hannah DeClark was a minor.

105.    Hannah DeClark stated "No" in response to the statement made by Sheriff Bart Heslington in paragraph 102.

106.    Sheriff Bart Heslington stated in response to Hannah DeClark's statement in paragraph 105 "From, from what Hannah tells me."

107.    Again Hannah DeClark stated "No" in response to the statement made by Sheriff

Bart Heslington in paragraph 106.

108.    However, undaunted Sheriff Bart Heslington continues on by stating "Which is also in line with information that I received. Umm, in talking to Hannah, this relationship started basically during homecoming week last year."

109.    Sheriff Bart Heslington did not have any information, reported to him or through personal knowledge, that RiLee Lutz and Hannah DeClark were engaged in a sexual relationship when Hannah DeClark was a minor.

110.    Hannah DeClark tried to further clarify that she misspoke earlier about homecoming and stated it was senior prom when she and RiLee Lutz hung out.

111.    Specifically, Hannah DeClark stated "I don't know if I got mixed up, but I know that I didn't go to homecoming... I didn't go to prom or whatever the, the dance was, I didn't... I know I went with Seth. I remember leaving Seth's house. To go hang out with her."

112.    A discussion between Hannah DeClark and Kristi DeClark led to Hannah DeClark stating "It wasn't like a hookup thing. It's not like we met up and like hooked up or anything. Like it wasn't a relationship. Like it was a relationship, but I... You know, like nothing actually sexual happened until I was after 18, but there was kissing and making out, but like when I was 17."

113.    Sheriff Bart Heslington in response stated "And, and I'm gonna be honest with you, Hannah, and we talked about this a little bit...", "And I know... Huh? You and I did. And I know... I know you care for her and I know you're trying to protect her.", "I get it. I get it.", "But I also...", "I'm also certain that that's not the case."

114.    Sheriff Bart Heslington, now in front of Hannah DeClark's mother, is refuting the facts which were provided to him by Hannah DeClark about the nature and extent of the

relationship between Hannah DeClark and RiLee Lutz, undermining her in an effort to further manipulate her and her memory.

115.   Sheriff Bart Heslington sought to continue to manipulate Hannah DeClark in the Second Interview to impugn RiLee Lutz

116.   Sheriff Bart Heslington told Hannah DeClark and Kristi DeClark "Yeah. You just... You just turned 18, so I know it happened before that because it wasn't very long after you were 18 that the relationship ended. Right?"

117.   Sheriff Bart Heslington, did not have any personal knowledge that Hannah DeClark and RiLee Lutz engaged in a sexual relationship before Hannah DeClark turned 18 years old.

118.   Sheriff Bart Heslington lied about the extent of his knowledge regarding the nature and extent of the relationship between Hannah DeClark and RiLee Lutz to Kristi DeClark and Hannah DeClark.

119.   Sheriff Bart Heslington sought to manipulate Hannah DeClark with what he stated was what he knew about the relationship between Hannah DeClark and RiLee Lutz in an effort to overbear her will.

120.   Sheriff Bart Heslington thereafter separated Kristi DeClark from Hannah DeClark to allow him to probe deeper and to further overbear Hannah DeClark's will.

121.   After Kristi DeClark left the room Sheriff Bart Heslington stated: "You're gonna be all right. All right? Okay. So I know that this is hard. So I have to tell you one thing. I have to tell you a couple of things. I'm here for you, and you know I care about you and I don't want you to be hurt, okay? I also know that I have to talk to you about some personal things, you won't embarrass me and you have no reason to be embarrassed."

**COMPLAINT - 16**

122.     Sheriff Bart Heslington sought to deepen the connection between himself and Hannah DeClark in an effort to get her to adopt his lie as her truth.

123.     In response to the statements made by Bart Heslington in paragraph 121, Hannah DeClark stated "I trust you., It's okay."

124.     At this point, after being outed as a lesbian to her mother Kristi DeClark, who was identified as "homophobic" by Hannah  DeClark in the first interview Hannah DeClark was crying.

125.     After making Hannah DeClark cry, Sheriff Bart Heslington sought to further manipulate Hannah DeClark and said "I'm just gonna take a liberty because I can see a box of tissue right there and I'm gonna get it for you. Is that all right?" in an attempt to further ingratiate himself as Hannah DeClark's friend.

126.      Sheriff Bart Heslington in an attempt to further manipulate Hannah DeClark continued his questioning by asking "So when I say that you were involved sexually with Rilee, what does that mean to you?"

127.     Hannah DeClark did not provide a clear response to the question asked in Paragraph 124.

128.     Sheriff Bart Heslington thereafter changed the question to "Like if I say that you had sex with Rilee, what does that mean?"

129.     Hannah DeClark answered his question with a question "Oral, like orals or any oral and penetration?"

130.     Sheriff Bart Heslington answered Hannah DeClark's question by stating "Uh-huh" and "When did that happen?"

131.     Hannah DeClark again sought further clarification saying "Whether that being

mouth or whether that's being, you know?"

132.   Sheriff Bart Heslington helped Hannah further by volunteering "Your hands, fingers?" and again asked "When did those things happen?"

133.   Hannah DeClark stated in response "Umm, I wanna say it was for sure after softball season, for sure. Like, it was after softball season."

134.   Sheriff Bart Heslington sought further to hone in on a timeframe for the alleged sexual contact between Hannah DeClark and RiLee Lutz by asking "Anyway, so, so tell me what happens after that. You guys were exchanging some text. You told me then you kinda, kinda get together. How long after that is it before you guys were involved sexually?"

135.   In response Hannah DeClark states "After the... After she tells me at the high school... After the high school." and "Umm, probably maybe a couple weeks after, at, at most." and "Maybe, maybe a month." and "I... I'm not clear about that..." and "And I'm not gonna lie to you."

136.   Sheriff Bart Heslington then asked "Okay. So tell me what happens the first time that you guys are together [sexually]."

137.   Hannah DeClark answered the direct question as follows: "Probably in the camper at the... Like, that was full-on. It was the summer, but I mean like, she put her hand on my arm... My leg and I did the same thing and stuff like that too."

138.   Hannah DeClark, in response to Sheriff Bart Heslington's verbal and non-verbal prompts drew the following statements from Hannah DeClark "But I mean, as far as like the whole, I don't know what you wanna call it, handsy stuff, like, more into handsy stuff, I'm pretty sure that happened... It was definitely, like, in a car in a parking lot somewhere. It wasn't..."

139.   Sheriff Bart Heslington interrupts Hannah DeClark and asks "Do you know

where?"

140.     Hannah DeClark responds to Sheriff Bart Heslington's question "I don't think... There's definitely a couple of times before the camper. This summer. Or, you know what I mean though?

141.     Sheriff Bart Heslington again lies to Hannah DeClark when he said "So I know that there were times that happened before you graduated."

142.     Sheriff Bart Heslington has no knowledge about any sexual activity which occurred between Hannah DeClark and RiLee Lutz.

143.     Sheriff Bart Heslington then states to Hannah DeClark "So tell me…"

144.     To wit, Hannah DeClark seeks to find the facts which support the statement Sheriff Heslington has now implanted into her mind as being that he claims he has knowledge of occurring.

145.     Hannah DeClark stated "It would've had to be in school... and then the summer also, that would've been the ending of it, 'cause that's when we broke up also."

146.     The most telling part of the manipulation is when Hannah DeClark, immediately after making the statements in No. 143 above said "So that makes sense."

147.     Sheriff Bart Heslington, seeking further clarification on the timeframe asked "So the very first time that, that you can remember that, uh... That you guys did anything, that you used your fingers on each other, when would that have been?"

148.      Hannah DeClark responds unequivocally "I do not have a date."

149.     Sheriff Bart Heslington, further sought to manipulate the lack of memory of Hannah DeClark by providing a date range he knew was absolutely false asking "Give me a... Give me a landmark, like it was how long before, you know, before school ended, it was over

Christmas break."

150.     Evidence that Sheriff Bart Heslington's efforts to confuse Hannah DeClark are evident in her response: "But I know it wasn't in softball what had happened. 'Cause I remember texting her and being like, "Hey, we need to hang out, I haven't seen you in a long time." But she had told me like before, like... 'Cause you know that before that she had told me and I had told her that we had feelings... Before she had said, 'You're not 18...', 'And we have to be careful about this.' And so it'd been like all this time before and then we saw each other at graduation too. But I just... All I remember is texting her and saying that to her, because I remember her telling me that it, it wasn't a good idea or something like that…. Umm, sorry, what was the question again? [chuckle]"

151.     Even at this point a clearly confused Hannah DeClark is still telling Sheriff Bart Heslington that nothing sexual happened before graduation.

152.     Acknowledging Hannah DeClark's ongoing confusion Sheriff Bart Heslington stated "I know. I understand. And your head's spinning a million miles an hour. Okay. So I know that when you spent the camper, you say full on... meaning that there was oral sex?"

153.     Hannah DeClark responds to Sheriff Bart Heslington's question as set  forth under paragraph 150 by stating "Yeah, but she didn't… Its gonna sound weird but she didn't do anything to me. Like it was me."

154.     Sheriff Heslington, further asks Hannah DeClark "Before the camper, what, what is the... most that you've done? The furthest you guys..."

155.     Hannah DeClark again reiterates "Literally, probably just her like rubbing my leg and stuff. Not like... I'm not gonna do with hand gestures 'cause that feels really wrong. But... And every time that she has touched me, or I have touched her, we have had consent. Like it, it

was consensual for sure."

156.    Clearly once again Hannah DeClark states that the most that occurred before the
camper was "her rubbing my leg and stuff" and "Not like" doing hand gestures and Hannah
DeClark indicated that no digital penetration or fondling occurred prior to the camper.

157.    As it has been clearly established the timeframe when the alleged camper event
occurred was after Hannah DeClark turned 18 years old, thus any sexual contact,  if there was
any would have been legal if consensual.

158.    Sheriff Bart Heslington, undeterred, asked "Okay. All right. So, I mean, prior to
the camper, you guys had... You touched each other on your vaginal areas?"

159.    Hannah DeClark, still confused responded "But clothes were on. Prior to the
camper, that means before. Right?"

160.    Sheriff Bart Heslington responds to Hannah DeClark's question about what the
work "prior" means by stating "Mm-hmm" and Hannah DeClark states "Yeah. Clothes were on,
clothes would have never been off."

161.    Sheriff Bart Heslington, further probed, "But your hands were inside of clothes?"

162.    Hannah DeClark stated in response "Uh…, sure"

163.    Sheriff Bart Heslington, probed further by offering more facts which were
unknown to him which he sought confirmed by Hannah DeClark like "Okay. All right. So, so
prior to that, you guys hadn't been naked?" and "But you had touched her vaginally, skin to
skin?" and "You guys would put your fingers inside of each other?"

164.    Hannah DeClark, did not include any dates or timeframes for the alleged conduct
which Sheriff Bart Heslington sought and received a response from Hannah DeClark and there is
nothing in the interview with Hannah DeClark to suggest that any sexual conduct or activity

occurred prior to Hannah DeClark turning 18 years old.

165.    Sheriff Bart Heslington tells Hannah DeClark "I've always been honest with you."

166.    On or about December 22, 2022, Sheriff Bart Heslington met with Hannah DeClark to view the contents of her phone to see the photos shared between Hannah DeClark and Lutz.

167.    Hannah DeClark identified seven (7) images which were shared between her and RiLee Lutz.

168.    None of the images shared by Hannah DeClark to Sheriff Bart Heslington indicated that Hannah DeClark and RiLee Lutz were engaged in a sexual or romantic relationship at any time.

169.    On or about February 17, 2023, Sheriff Bart Heslington, provided an affidavit in support for an arrest warrant for RiLee A. Lutz for the crime of Sexual Battery of a Minor Child 16 or 17 years of age, and the same was provided to the Bear Lake County Prosecutor.

170.    As contained in the affidavit for probable cause Sheriff Bart Heslington made the following false statements:

    a.    "Additional Information was that there was a video/picture showing LUTZ and H.D. sitting in a car kissing."

    b.    "H.D. described at least 2 occasions where she and LUTZ were parked in a vehicle and 'making out', they remained clothed but put their hands inside one another's pants and there was manual-genital contact."

    c.    "H.D. said that during these incidents she and LUTZ put their fingers inside one another's vagina"

    d.    "H.D. said that these incidents took place in the parking area of the softball

**COMPLAINT - 22**

fields at Allinger Park"

    e.  "H.D. said that she and LUTZ talked about being careful - with LUTZ saying 'if people find out I'm in trouble'"

171.    As contained in the affidavit for probable cause Sheriff Bart Heslington made the following statements to draw a false inference that illicit sexual conduct occurred prior to Hannah DeClark attaining the age of 18 years:

    a.  "H.D. provided a number of time landmarks to describe when her relationship with LUTZ took place - She referred to Homecoming Dance, Senior Prom, the softball season and the end of school - All of these events took place prior to H.D. turning 18"

    b.  "Both H.D. and LUTZ acknowledge that they were involved in a sexual relationship."

    c.  "At the time of the relationship H.D. was 17 years old and LUTZ was 26 or 27 years old"

172.    On or about March 1, 2023, Sheriff Bart Heslington sought an arrest warrant with bond for RiLee Lutz.

173.    On Information and belief on or about March 3, 2023, Sheriff Bart Heslington directed his deputies to arrest and detain RiLee Lutz.

174.    On information, Sheriff Bart Heslington, sought an arrest warrant instead of a summons with the intention to intimidate and harass RiLee Lutz.

175.    On information, Sheriff Bart Heslington sought the arrest warrant from Magistrate Judge Garbett due to the longstanding practice of issuing arrest warrants without following the guidelines set forth under Idaho Criminal Rule 4(c).

176.    At the time of RiLee Lutz arrest she had been a long term resident of Bear Lake County and a property owner.

177.    At the time of RiLee Lutz arrest she was employed in Montpelier, Idaho at the Oregon Trail Center.

178.    At the time of RiLee Lutz arrest all of her close family connections were in Bear Lake County Idaho.

179.    At the time of RiLee Lutz arrest RiLee Lutz had no other criminal history.

180.    At the time of RiLee Lutz arrest RiLee Lutz was being charged with a very serious criminal offense.

181.    At the time of RiLee Lutz arrest there was no reason to believe that RiLee Lutz would fail to appear for all court dates or appear for a summons.

182.    On information and belief, Sheriff Bart Heslington met with Bear Lake County Prosecutor Adam McKenzie regarding Hannah DeClark and the need to have her prepared for the preliminary hearing.

183.    On or about March 13, 2023 Prosecutor Adam McKenzie met with Hannah DeClark in his office in preparation for her testimony at the preliminary hearing.

184.    On information on or about March 13, 2023 Sheriff Bart Heslington met with Hannah DeClark in preparation for her testimony at the preliminary hearing.

185.    On or about March 15, 2023, Prosecutor Adam McKenzie met with Hannah DeClark in his office in preparation for her testimony at the preliminary hearing.

186.    On or about March 15, 2023, Sheriff Bart Heslington met with Hannah DeClark in his office in preparation for her testimony at the preliminary hearing.

187.    On information Sheriff Bart Heslington manipulated Hannah DeClark to provide

a false statement to the court regarding the nature and extent of the relationship she had with RiLee Lutz when she was 17 years old.

188.    On information Adam McKenzie told Hannah DeClark what he needed her to testify about during the court hearing.

189.    On information and belief, Sheriff Bart Heslington told Hannah DeClark that she needed to confirm the information Sheriff Heslington included in his affidavit.

190.    On March 15, 2023, Sheriff Bart Heslington was present in the court for the Preliminary Hearing.

191.    On March 15, 2023, Hannah DeClark provided testimony under direct examination at the Preliminary Hearing.

192.    On March 15, 2023, Hannah DeClark provided the following statements which were new or added to the information included in the interviews which occurred on September 22, 2022:

    a.    In response to a question about when the alleged touching of each other took place Hannah DeClark stated "In May, so before I graduated"

    b.    In response to where the alleged touching took place Hannah DeClark stated "The back of the Oregon Trail Center"

    c.    In response to the question of whether the touching only took place in the Oregon Trial Parking Lot, Hannah DeClark stated "yes".

    d.    In response to a question about whether the alleged touching took place under clothing Hannah DeClark stated "sometimes".

    e.    In response to a question about when the under the clothing touching occurred Hannah DeClark's response was "Probably after the season."

    f.   In response to a question about timing of the alleged touching under the clothes Hannah DeClark agreed that it occurred when she was 17.

    g.   In response to a question about whether the alleged touching was taking place prior to graduation Hannah DeClark stated "yes".

193.    On information and belief the statements elicited at the preliminary hearing were provoked and by Sheriff Bart Heslington.

194.    On information and belief the statements elicited at the preliminary hearing were provoked and by Adam McKenzie.

195.    Sheriff Bart Heslington sought to back fill the case against RiLee Lutz by interviewing additional "witnesses" to the alleged relationship between RiLee Lutz and Hannah DeClark.

196.    The state of Idaho, pursuant to a subpoena directed to the Bear Lake High School, produced an email dated May 1, 2023 – from Cameron Crane to the State of Idaho, Adam McKenzie, ostensibly relating to the investigation that it conducted into the reports from Tahnee Cook and Kelsea Skinner regarding Hannah DeClark and RiLee Lutz. There does not appear to be a contemporaneous report on its investigation.

197.    On or about May 2, 2023, Adam McKenzie met with Hannah DeClark.

198.    On or about May 12, 2023, Sheriff Bart Heslington, drafted out a supplemental report regarding the information included in Cameron Crane's email (identified in paragraph 191) stating that he had not received the audio recording or heard the audio recording referenced.

199.    On or about May 12, 2023, Adam McKenzie met with Hannah DeClark.

200.    On or about May 23, 2023, Sheriff Bart Heslington, interviewed Kelsea Skinner related to the information she knew about RiLee Lutz and Hannah DeClark.

201.    On or about May 23, 2023, Kelsea Skinner informed Sheriff Bart Heslington that she, while at the softball field in July 2022, observed Hannah DeClark and RiLee Lutz kissing a car at a softball field.

202.    Kelsea Skinner did not have any personal knowledge of a relationship, sexual or otherwise, prior to Hannah DeClark turning 18 years old.

203.    On or about May 23, 2023, Bart Heslington interviewed Jared Hiller, Bear Lake High School Head Softball Coach, regarding his observations of Hannah DeClark and RiLee Lutz. Jared Hiller indicated that there was no indication of any relationship between Hannah DeClark and RiLee Lutz, further Hiller stated that no person has come forward with any direct or first hand knowledge of a relationship between Hannah DeClark and RiLee Lutz.

204.    On or about June 6, 2023, Deputy Matt Kunz, and on information and belief, under the direction of Sheriff Bart Heslington and Adam McKenzie, did seek and obtain a warrant for the search and seizure of records from SNAP INC., related to "rizzer23" and "hdeclark2" and sought to search the records related thereto.

205.    On or about June 8, 2023, Deputy Matt Kunz did serve the search warrant on SNAP INC., related to the account "rizzer23" and "hdeclark2".

206.    Idaho Code 19-4402 states that a search warrant may be issued to search for and seize: 1) "any property or intangible that constitutes evidence of a criminal offense." 2) "contraband, the fruits of crime, or things otherwise criminally possessed." 3) "Weapons or other things by means of what a crime has been committed or reasonably appears about to be committed." 4) "a person named in an arrest warrant."

207.    Ostensibly, that State of Idaho sought information from SNAP Inc., related to or constituting evidence supporting a the crime as charged that Hannah DeClark and RiLee Lutz

engaged in an sexual relationship while Hannah DeClark was underage.

208.    The State of Idaho did not seek for evidence rationally limited to the alleged criminal activity.

209.    The State of Idaho's search was overly broad and expansive in that it was not limited to conversations, messages, photos, videos, or the like exchanged between Hannah DeClark and RiLee Lutz from the timeframe in which Hannah DeClark was a minor, or only messages between Hannah DeClark and RiLee Lutz.

210.    The search warrant sought every message and picture that was contained on both accounts.

211.    On or about June 15, 2023, Adam McKenzie met with Hannah DeClark.

212.    On or about June 20, 2023, Deputy Matt Kunz, received the data packages for both user accounts "rizzer23" and "hdeclark2" and on June 22, 2023 did download the same.

213.    On or about June 22, 2023 – June 25, 2023 Deputy Matt Kunz did search the data which was provided SNAP INC., for both users.

214.    On or about June 28, 2023, Sheriff Bart Heslington, swore under the penalty of perjury, that he called Hannah DeClark on September 22, 2022 prior to arriving at the DeClark family home to discuss the nature of the allegations with both Hannah DeClark and Kristi DeClark.

215.    On information and belief, Sheriff Bart Heslington lied about calling Hannah DeClark on September 22, 2022 and committed perjury on June 28, 2023 by affixing his electronic signature to his police report.

216.    On or about June 29, 2023, Adam McKenzie met with Hannah DeClark.

217.    On or about June 29, 2023, Sheriff Bart Heslington, prepared his "supplement"

report to describe what occurred on December 22, 2022, between him and Hannah DeClark related to certain photos which he sought from her.

218.   On or about June 30, 2023, the state of Idaho, pursuant to a subpoena directed to Hannah DeClark, produced records of text messages between Hannah DeClark and RiLee Lutz. The first text message between RiLee Lutz and Hannah DeClark occurred on or about June 12, 2022.

219.   On or about June 30, 2023, the State of Idaho, knew that Hannah DeClark could not produce evidence to support the claim that Hannah DeClark and RiLee Lutz "texted" each other when Hannah DeClark was underage.

220.   On or about June 30, 2023, the State of Idaho knew that Hannah DeClark possessed 13 photos depicting RiLee Lutz. None of the photos depicted RiLee Lutz and Hannah DeClark kissing or engaging in any other relationship type conduct.

221.   On or about June 30, 2023, the State of Idaho knew that Hannah DeClark's snapchat messenger included media messages of, by, or between RiLee Lutz and Hannah DeClark from January 5, 2022 through June 8, 2022.

222.   On or about June 30, 2023, the State of Idaho knew that none of the media messages shared between Hannah DeClark and RiLee Lutz included any content suggesting, even circumstantially, that there was a romantic relationship between Hannah DeClark and RiLee Lutz.

223.   On or about June 30, 2023, the State of Idaho did know that Hannah DeClark and a minor were engaged in sexual activity which was preserved in Snap Inc., records.

224.   Hannah DeClark was charged with the crime of lude and lascivious conduct with a minor related to the evidence obtained in the warrant issued to SNAP Inc. in this case.

225.    On information and belief the evidence which was located in the Hannah DeClark SNAP records included videos, photos, and text messages of Hannah DeClark engaging in sexual activity amounting to the rape or molestation of a child.

226.    On or about September 20, 2023, Adam McKenzie met with Hannah DeClark.

227.    On information, Hannah DeClark pled guilty to felony injury to a child as part of a plea agreement wherein she would receive probation and dismissal of the criminal charges against her for lude and lascivious conduct, in exchange for her continued participation in the State v. Lutz criminal trial.

<u>FIRST CLAIM FOR RELIEF</u><br><u>VIOLATION OF U.S. CONSTITUTIONAL RIGHTS</u>

228.    All preceding paragraphs are hereby renewed and incorporated herein by reference.

229.    The United States Constitution guarantees the right to be free from unreasonable searches and seizures.

230.    Defendants BEAR LAKE COUNTY, BEAR LAKE COUNTY SHERIFF'S OFFICE, BART HESLINGTON, MATTHEW KUNZ, and ADAM MCKENZIE, collectively and individually, acted under color of law when they violated RiLee Lutz constitutional rights through conduct which included, but is not limited to, unreasonably seeking a limitless warrant and obtaining the same relating to RiLee Lutz personal Snap Inc., account.

231.    Defendants' BEAR LAKE COUNTY, BEAR LAKE COUNTY SHERIFF'S OFFICE, BART HESLINGTON, MATTHEW KUNZ, and ADAM MCKENZIE conduct proximately violate RiLee Lutz's constitutional right to be free from unreasonable searches and seizures and due process of law in violation of the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983.

232.    RiLee Lutz is entitled to attorney's fees and costs for the maintenance of this action pursuant to 42 U.S.C. §1988.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF IDAHO CONSTITUTIONAL RIGHTS

233.    All preceding paragraphs are hereby renewed and incorporated herein by reference.

234.    The Idaho States Constitution guarantees the right to be free from unreasonable searches and seizures pursuant to Article 1, Section 17.

235.    The Defendants, Defendants BEAR LAKE COUNTY, BEAR LAKE COUNTY SHERIFF'S OFFICE, BART HESLINGTON, MATTHEW KUNZ, and ADAM MCKENZIE, collectively and individually, acted under color of law when they violated RiLee Lutz constitutional rights through conduct which included, but is not limited to, unreasonably seeking a limitless warrant and obtaining the same relating to RiLee Lutz personal Snap Inc., account.

236.    The rights afforded to citizens of the State of Idaho provide greater protections than the rights enumerated under the United States Constitution

237.    Defendants, BEAR LAKE COUNTY, BEAR LAKE COUNTY SHERIFF'S OFFICE, BART HESLINGTON, MATTHEW KUNZ, and ADAM MCKENZIE, conduct proximately violated RiLee Lutz constitutionally protected right to be free from unreasonable searches and seizures Article 1, Section 17. *See State v. Iniguez*, 526 P.3d 1003.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF IDAHO STATUTORY RIGHTS

238.    All preceding paragraphs are hereby renewed and incorporated herein by reference.

239.    Idaho Code 19-4402 limits the authority of government agents to seek only

**COMPLAINT - 31**

evidence demonstrating a criminal offense, contraband or fruits of crimes, weapons or other things by means to commit or was used in the commission of a crime, or persons named in an arrest warrant.

240.    The Defendants, BEAR LAKE COUNTY, BEAR LAKE COUNTY SHERIFF'S OFFICE, BART HESLINGTON, MATTHEW KUNZ, and ADAM MCKENZIE, collectively and individually, acted under color of law when they violated the statutory protections afforded citizens of the State of Idaho under Idaho Code 19-4402.

FOURTH CLAIM FOR RELIEF
VIOLATION OF IDAHO STATUTORY RIGHTS

241.    All preceding paragraphs are hereby renewed and incorporated herein by reference.

242.    The Idaho State Criminal Rule 4 was established to provide protections against unreasonable arrest.

243.    The Defendants, BEAR LAKE COUNTY, BEAR LAKE COUNTY SHERIFF'S OFFICE, BART HESLINGTON, MATTHEW KUNZ, and ADAM MCKENZIE, collectively and individually, acted under color of law when they violated RiLee Lutz rights when they sought an arrest warrant without first providing the court with the necessary information to ensure that RiLee Lutz, if appropriate, was entitled to a summons rather than having to suffer the indignity of arrest.

244.    Further, the Defendants, BEAR LAKE COUNTY, BEAR LAKE COUNTY SHERIFF'S OFFICE, BART HESLINGTON, MATTHEW KUNZ, and ADAM MCKENZIE, collectively and individually, did act under the color of law when they arrested RiLee Lutz on March 3, 2023 in an effort to ensure that RiLee Lutz spent the weekend in confinement.

245.    The decision to arrest on a Friday was a tactical decision to expose RiLee Lutz to

the indignity of a strip search.

246.     The decision to arrest on a Friday was a tactical decision to expose RiLee Lutz to the indignity of a confinement.

247.     Defendants, BEAR LAKE COUNTY, BEAR LAKE COUNTY SHERIFF'S OFFICE, BART HESLINGTON, MATTHEW KUNZ, and ADAM MCKENZIE, collectively and individually, acted in complete and total disregard for RiLee Lutz.

248.     Defendants, BEAR LAKE COUNTY, BEAR LAKE COUNTY SHERIFF'S OFFICE, BART HESLINGTON, MATTHEW KUNZ, and ADAM MCKENZIE,  collectively and individually, acted in intentionally to cause RiLee Lutz humiliation and shame.

249.     Defendants, BEAR LAKE COUNTY, BEAR LAKE COUNTY SHERIFF'S OFFICE, BART HESLINGTON, MATTHEW KUNZ, and ADAM MCKENZIE,  collectively and individually, acted in intentionally to cause RiLee Lutz emotional distress.

250.     Defendants, BEAR LAKE COUNTY, BEAR LAKE COUNTY SHERIFF'S OFFICE, BART HESLINGTON, MATTHEW KUNZ, and ADAM MCKENZIE, collectively and individually, know RiLee Lutz and knew that being arrested would cause emotional distress.

FIFTH CLAIM FOR RELIEF
DEFIMATION OF CHARACTER

251.     All preceding paragraphs are hereby renewed and incorporated herein by reference.

252.     Sheriff Bart Heslington made false statements of fact to Hannah DeClark which he knew were not true.

253.     Sheriff Bart Heslington made false statements of fact to Kristi DeClark which he knew were not true.

254.     Sheriff Bart Heslington made false statements of fact to Adam McKenzie which

he knew were not true.

255.     Sheriff Bart Heslington made false statements of fact to Judge Garbett which he knew were not true.

256.     Sheriff Bart Heslington was reckless in the false statements he made to Hannah DeClark.

257.     Sheriff Bart Heslington was reckless in the false statements he made to Kristi DeClark.

258.     Sheriff Bart Heslington was reckless in the false statements he made to Adam McKenzie.

259.     Sheriff Bart Heslington was reckless in the false statements he made to Judge Garbett.

260.     The false statements Sheriff Bart Heslington made to Hannah DeClark have damaged the reputation of RiLee Lutz

261.     The false statements Sheriff Bart Heslington made to Kristi DeClark have damaged the reputation of RiLee Lutz

262.     The false statements Sheriff Bart Heslington made to Adam McKenzie have damaged the reputation of RiLee Lutz

263.     The false statements Sheriff Bart Heslington made to Judge Garbett have damaged the reputation of RiLee Lutz

264.     The false statements Sheriff Bart Heslington made to Hannah DeClark have damaged the reputation of RiLee Lutz

265.     Plaintiff is entitled to an award for damages related to the false statements made by Sheriff Bart Heslington.

## SIXTH CLAIM FOR RELIEF

266.     All preceding paragraphs are hereby renewed and incorporated herein by reference.

267.     Bear Lake County is the employer of Sheriff Bart Heslington, Deputy Matt Kunz, and Adam McKenzie.

268.     Bear Lake County has a duty to properly train and supervise Sheriff Bart Heslington, Deputy Matt Kunz, and Adam McKenzie.

269.     Bear Lake County failed to properly train and supervise Sheriff Bart Heslington, Deputy Matt Kunz, and Adam McKenzie.

270.     Bear Lake County failed to protect RiLee Lutz from Sheriff Bart Heslington, Deputy Matt Kunz, and Adam McKenzie improper actions.

271.     It was reasonably foreseeable that the Bear Lake County's failure to properly train, supervise, and formulate policy would result in harm, including but not limited to the deprivation of RiLee Lutz's constitutional rights.

272.     Bear Lake County's failure to properly train, supervise, and formulate policy and practices for Sheriff Bart Heslington, Deputy Matt Kunz, and Adam McKenzie. proximately caused damages and resulted in the deprivation of RiLee Lutz's constitutional rights.

273.     Bear Lake County's actions were, at minimum negligent, and Bear Lake County is liable for their negligent acts under Idaho Code Title 6, Chapter 9.

274.     Bear Lake County's actions were also a violation of the Fourth and Fourteenth Amendments and caused RiLee Lutz damages.

## SEVENTH CLAIM FOR RELIEF

275.     The preceding paragraphs are realleged and fully incorporated herein by this

reference.

276.    The United States Constitution guarantees the right to be free from unreasonable searches and seizures and to due process of law.

277.    Defendant Bear Lake County, acting under the color of state law, and through widespread practices and/or policies violated RiLee Lutz's constitutional rights.

278.    Defendant Bear Lake County's policies was the moving force behind the violation of RiLee Lutz federally protected rights.

279.    Pursuant to 42 U.S.C. § 1988 RiLee Lutz is entitled to attorney's fees and costs for the maintenance of this action.

EIGHTH CLAIM FOR RELIEF
VIOLATION OF U.S. CONSTITUTIONAL RIGHTS

280.    All preceding paragraphs are hereby renewed and incorporated herein by reference.

281.    The Defendants, BEAR LAKE COUNTY, BEAR LAKE COUNTY SHERIFF'S OFFICE, BART HESLINGTON, MATTHEW KUNZ, and ADAM MCKENZIE, collectively and individually, acted under color of law observed and had reason to know that RiLee Lutz rights were being violated.

282.    Defendants, BEAR LAKE COUNTY, BEAR LAKE COUNTY SHERIFF'S OFFICE, BART HESLINGTON, MATTHEW KUNZ, and ADAM MCKENZIE, had reason to know that the actions of Sheriff Bart Heslington were unlawful because his actions directly violated implemented policy.

283.    Defendants, BEAR LAKE COUNTY, BEAR LAKE COUNTY SHERIFF'S OFFICE, BART HESLINGTON, MATTHEW KUNZ, and ADAM MCKENZIE, had reason to know that the actions of Matt Kunz were unlawful because his actions directly violated

implemented policy.

284.    Defendants, BEAR LAKE COUNTY, BEAR LAKE COUNTY SHERIFF'S

OFFICE, BART HESLINGTON, MATTHEW KUNZ, and ADAM MCKENZIE, had reason to

know that the actions of Adam McKenzie were unlawful because his actions directly violated

implemented policy.

285.    Although the defendants, BEAR LAKE COUNTY, BEAR LAKE COUNTY

SHERIFF'S OFFICE, BART HESLINGTON, MATTHEW KUNZ, and ADAM MCKENZIE,

knew or had reason to know that the actions were violations of RiLee Lutz constitutionally

protected rights the one or all of the identified defendants failed to intervene and prevent harm

from occurring to RiLee Lutz.

286.    RiLee Lutz has the right to bring this action pursuant to 42 U.S.C. §1983 as

Defendants acted under the color of state law.

287.    RiLee Lutz is entitled to attorney's fees and costs for the maintenance of this

action pursuant to 42 U.S.C. §1988.

<u>NINTH CLAIM FOR RELIEF – DEFIMATION AGAINST HANNAH DECLARK</u>

288.    All preceding paragraphs are hereby renewed and incorporated herein by

reference.

289.    In the spring of 2022 RiLee Lutz was working for the Bear Lake High School

Softball team as an assistant coach.

290.    In the spring of 2022 Hannah DeClark was a senior at Bear Lake High School.

291.    In the spring of 2022 Hannah DeClark was a softball player on the Bear Lake

High School Softball team.

292.    During the 2021/2022 Bear Lake High School Softball season RiLee Lutz treated

Hannah DeClark like every other player.

293.    At no point during the 2021/2022 Bear Lake High School Softball season was Hannah DeClark and RiLee Lutz's relationship anything more than player and coach.

294.    RiLee Lutz and Hannah DeClark have never been involved in a sexual relationship.

295.    RiLee Lutz and Hannah DeClark have never been involved in a romantic relationship.

296.    At some point during May, June, or July 2022 Hannah DeClark was recorded saying that RiLee Lutz was her "sugar mamma" by an unknown person.

297.    It is on information and belief that the statement identified in paragraph 286 was made to the unknown person.

298.    It is on information and belief that the unknown person to whom Hannah DeClark made the statement is also the person that recorded the statement.

299.    At the time Hannah DeClark made the statement identified in paragraph 286 that RiLee Lutz was her "sugar mamma" Hannah DeClark knew the statement to be false.

300.    It is on information and belief that the unknown person produced the recording of Hannah DeClark stating that RiLee Lutz was her sugar mamma to Tanhee Cook.

301.    On information and belief Tanhee Cook produced the audio recording to Bear Lake High School Officials, Luke Kelsey and Cameron Crane.

302.    On information and belief Hannah DeClark made statements to Kelsea Skinner on or about May, June, or July, 2022 claiming to be in sexual relationship with RiLee Lutz.

303.    On information and belief Kelsea Skinner informed Tanhee Cook that she had heard RiLee Lutz and DeClark were involved in a sexual relationship from DeClark.

304.    On information and belief Kelsea Skinner informed Cameron Crane that she had heard that DeClark and RiLee Lutz were involved in a sexual relationship from DeClark but didn't know what to believe because DeClark was known to be dishonest.

305.    On information and belief Bear Lake High School terminated RiLee Lutz from her position as assistant softball coach because of the rumor.

306.    The false statements to the unknown person and Kelsea Skinner caused the Bear Lake County Sheriff Department to investigate whether RiLee Lutz and Hannah DeClark were involved in a sexual relationship at a time when Hannah DeClark was a minor.

307.    When asked Hannah DeClark denied the existence of any sexual or romantic relationship between her and RiLee Lutz to Sheriff Heslington when she was interviewed on September 22, 2022.

308.    Hannah DeClark stated to Sheriff Heslington that she received text messages from RiLee Lutz stating that RiLee Lutz was attracted to Hannah DeClark.

309.    Hannah DeClark knows that RiLee Lutz did not send any text message to Hannah DeClark stating that she was attracted to Hannah DeClark.

310.    Hannah DeClark knew that the statement was false.

311.    Sheriff Heslington made false and misleading statements to Hannah DeClark about evidence that did not exist to manipulate Hannah DeClark into making a false statement about the nature and extent of the relationship between Hannah DeClark and RiLee Lutz.

312.    Hannah DeClark, at the direction of Sheriff Heslington and Adam McKenzie, testified that RiLee Lutz and Hannah DeClark engaged in sexual activity when Hannah DeClark was 17 years old.

313.    Hannah DeClark knows that she and RiLee Lutz did not engage in sexual activity

when Hannah DeClark was 17 years old.

314.    Hannah DeClark's false statement led to RiLee Lutz being charged with two felony charges for sexual battery of a minor.

315.    Hannah DeClark's false statements have damaged RiLee Lutz' reputation.

316.    RiLee Lutz to be terminated from her employment due to the criminal charges based on Hannah DeClark's false statements.

**WHEREFORE**, Plaintiffs respectfully pray for judgment against Defendants as follows:

A.    For recovery of all special and general damages sustained as a direct and proximate result of the illegal actions, violations of constitutional duties and any other wrongful acts of the Defendants, in a sum exceeding $10,000;

B.    For an award of punitive damages, provided that the Plaintiff can establish that Defendants acted with "evil motive or intent", reckless or callous indifference to RiLee Lutz constitutional rights,

C.    For the recovery of all reasonable costs and attorney's fees pursuant to Federal law, including, but not limited to, 42 U.S.C. § 1988 and 15 U.S.C. § 1681 *et seq.*;

D.    For any and all further relief the Court deems just and equitable;

E.    Plaintiffs demand a trial by jury in this matter.

DATED this 3rd day of April, 2024.


BECKETT LAW FIRM


By: _____
        **KRISTIAN BECKETT**
        **A**ttorney for Plaintiff